USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  9/17/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DALE MILLER and JOHN F. BARTON, JR., on behalf of themselves and all others similarly situated,

                        Plaintiffs,

-against-

METROPOLITAN LIFE INSURANCE COMPANY, a New York Corporation; and DOES 1-10, inclusive,

                        Defendants.

17 Civ. 7284 (AT)

**<u>ORDER</u>**

ANALISA TORRES, District Judge:

      Plaintiffs, Dale Miller and John F. Barton, Jr., commercial airline pilots and holders of Metropolitan Life Insurance Company ("MetLife") policies, allege that Defendant,[1] MetLife, intentionally and erroneously designated them as smokers when calculating their premiums.  In their second amended complaint (the "SAC"), Plaintiffs bring claims for breach of contract, breach of the implied covenant of good faith and fair dealing ("the implied covenant") sounding in contract, breach of the implied covenant sounding in tort, and negligence, on behalf of themselves and a putative class of similarly situated persons.  SAC ¶¶ 47–74, ECF No. 97. MetLife moves to dismiss the SAC for lack of jurisdiction and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  ECF No. 104.  For the reasons stated below, Defendants' motion to dismiss is GRANTED.[2]

---

[1] Plaintiffs also name defendants John Does 1-10, who Plaintiffs allege are other parties responsible in some manner for the acts alleged in the SAC.  SAC ¶ 7.

[2] Because the grounds for dismissal apply with equal force to the John Doe Defendants, Plaintiffs' claims are dismissed in their entirety.

## BACKGROUND

The following facts are taken from the SAC and its attached exhibits.[3] Plaintiffs, Dale Miller and John F. Barton, Jr., are commercial airline pilots. At all relevant times, Miller resided in California and Barton resided in Colorado. SAC ¶¶ 4–5.

Miller has been a commercial airline pilot with United Airlines since 1990. SAC ¶ 10. As part of his employee benefits package, Miller enrolled in a life insurance program with MetLife. *Id.* ¶ 11. Around March 2000, Miller was notified that his life insurance policy was changing to a Group Variable Universal Life ("GVUL") policy. *Id.* ¶ 13. The terms of that policy provided that the policy's premium would be "determined by the total amount of insurance provided by this policy . . . multiplied by the appropriate [p]remium rate(s) which are then in effect subject to any [p]remium adjustments, if applicable." GVUL Policy at B-8, ECF No. 97–2. The policy further provided that "MetLife may use any reasonable method to compute [p]remiums due under this policy." *Id.* Exhibit 1 to the policy provided a schedule of the initial premium rates based on three variables: the age of the insured, the insured's smoker status, and the total amount of insurance. *Id.* at B-13.

As part of enrolling in the GVUL policy, Miller completed a GVUL Special Enrollment Change Form (the "Enrollment Form"). SAC ¶ 14; *see also* Enrollment Form, ECF No. 97–1. Section 1 of this enrollment form was labeled "Smoker/Non-Smoker Status Change." SAC ¶ 15. This section asked prospective policyholders to select between two options: "From Smoker to Non-Smoker" or "From Non-Smoker to Smoker." *Id.* Miller left both of these options blank

---

[3] In connection with their motion to dismiss, Defendant filed several extrinsic documents attached to the declaration of Robert Scott Connally. *See* ECF No. 106. Plaintiffs object to the Court's consideration of some of these documents. *See* Pl. Obj. at 2–3, ECF No. 108. Because the extrinsic documents are not necessary to the decision here, the Court does not address whether these documents are properly submitted in connection with Defendant's motion.

because he did not smoke and had not smoked during the relevant period, so there was no change to report. *Id.* ¶¶ 12, 15. Shortly thereafter, MetLife began charging Miller a smoker rate for his life insurance policy. *Id.* ¶¶ 17–18.

In October 2016, Miller decided to change the coverage on his GVUL policy through the United Airlines employee benefits website. *Id.* ¶ 19. He was required to complete an online form that included a question regarding his tobacco use for the previous five years. *Id.* ¶ 20. He answered that he was not a smoker. *Id.* After noting that the new price of insurance was lower than what he had been previously paying, he contacted MetLife customer service. *Id.* ¶¶ 21–22. The customer service agent told Miller that he had been designated a smoker since his GVUL policy went into effect. *Id.* ¶ 22. Miller contacted his union and MetLife to request a refund. *Id.* ¶ 23. On December 7, 2016, MetLife informed Miller by letter that he had been enrolled at the smoker rate "as the default because [he] did not indicate [his] smoking status during the initial enrollment." *Id.* ¶ 24. Appended to the letter was Miller's enrollment form, but MetLife advised him that "[a]ny other enrollment materials from 2000 are outside [MetLife] document retention guidelines and no longer available." *Id.* ¶ 24. Miller estimates that MetLife's decision to designate him as a smoker resulted in a 19.7% overcharge in premium payments. *Id.* ¶ 25.

Miller informed Barton about this experience. *Id.* ¶ 28. After his own investigation, Barton too realized that he had been charged smoker rates for his life insurance. *Id.* ¶ 29. Unlike with Miller, MetLife declined to provide Barton with his enrollment form for the GVUL policy. *Id.* ¶ 30. Barton, like Miller, was a non-smoker during the relevant five-year lookback period under the policy. *Id.* ¶ 31.

Plaintiffs initiated this action on September 25, 2017. ECF No. 1. They filed their first amended complaint on February 20, 2018, bringing claims for breach of contract and fraud. ECF

3

No. 73. MetLife moved to dismiss the first amended complaint, arguing that the claims were precluded by the Securities Litigation Uniform Standards Act ("SLUSA"), that Plaintiffs had failed to state a claim, and that Plaintiffs' claims were time-barred. ECF No. 82. The Court referred the motion to the Honorable Sarah Netburn. ECF No. 58. In the report and recommendation—which was adopted in full—the Court found that Plaintiffs' fraud claim was precluded by SLUSA and that Plaintiffs had failed to state a claim for breach of contract. *See Miller v. Metro. Life Ins. Co.*, No. 17 Civ. 07284, 2018 WL 6625096, at *5–8 (S.D.N.Y. Sept. 25, 2018), *adopted by*, 2018 WL 5993477 (Nov. 15, 2018). The Court gave Plaintiffs an opportunity to file an amended complaint in order to "identify which specific contractual provision was allegedly breached and/or . . . to assert a breach of the covenant of good faith and fair dealing." 2018 WL 6625096, at *8.

Plaintiffs filed the SAC on January 4, 2019. The SAC asserts claims for breach of contract, contractual breach of the implied covenant of good faith and fair dealing, tortious breach of the duty of good faith and fair dealing, and negligence. SAC ¶¶ 47–74. Plaintiffs bring these claims on behalf of themselves as well as putative California, Colorado, and nationwide classes, consisting of all persons who resided in California, Colorado, or the United States, and who:

> entered into a contract with [MetLife] in response to a Group Variable Universal Life insurance offer in replacement of their Optional Term Life or Group Universal Life policy, wherein the enrollment form provided for a change in smoker status section which was left blank, and where [MetLife] charged smoker rates despite the class members never having enrolled as smokers.

*Id.* ¶ 37. Plaintiffs claim that these proposed classes may be maintained under Federal Rules of Civil Procedure 23(b)(1), (b)(2), or (b)(3). *Id.* ¶¶ 38–46.

4

**DISCUSSION**

I. <u>Legal Standard</u>

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* When the jurisdictional facts are in dispute, "the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Mori v. El Asset Mgmt., Inc.*, No. 15 Civ. 1991, 2016 WL 859336, at *2 (S.D.N.Y. Jan. 28, 2016) (quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions[] and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Ultimately, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. The court must accept the allegations in the pleadings as true and draw all reasonable inferences in favor of the non-movant. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

II.     Analysis

   A. Preclusion under the Securities Litigation Uniform Standards Act

SLUSA "forbids the bringing of large securities class actions based upon violations of state law." *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 380 (2014). It prevents plaintiffs from circumventing the heightened pleading requirements implemented under the Private Securities Litigation Reform Act by pleading state-law claims that could have been brought under the federal securities laws. *In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 138 (2d Cir. 2015). To meet this goal, "SLUSA precludes private parties from filing in federal or state court (1) a covered class action (2) based on state law claims, (3) alleging that defendants made 'a misrepresentation or omission of a material fact' or 'used or employed any manipulative or deceptive device or contrivance' (4) 'in connection with' the purchase or sale of (5) covered securities." *Rayner v. E*TRADE Fin. Corp.*, 899 F.3d 117, 119–20 (2d Cir. 2018) (quoting 15 U.S.C. § 78bb(f)(1)). In its earlier decision, the Court adopted Judge Netburn's finding that four of these elements applied; Plaintiffs bring a covered class action, based on state law claims, in connection with the purchase or sale of covered securities. *See Miller*, 2018 WL 5993477; *see also* 2018 WL 6625096, at *5–7. The amendments in the SAC do not alter this conclusion. *See* SAC ¶¶ 47–74. Thus, the only remaining dispute is whether Plaintiffs' claims are based on allegations of misrepresentations, omissions, or the use of a manipulative device. Plaintiffs argue that their claims for breach of contract, contractual breach of the implied covenant, tortious breach of the implied covenant, and negligence do not require proof of misrepresentations or manipulation and, therefore, SLUSA does not apply. The Court disagrees.

In assessing whether claims "fall within the ambit of SLUSA, [courts] emphasize substance over form." *Rayner*, 899 F.3d at 120. Plaintiffs cannot "escape SLUSA by artfully

characterizing a claim as dependent on a theory other than falsity when falsity nonetheless is essential to the claim . . . ." *Id.* (citation omitted). Thus, even though the SAC makes no allegations of fraud, the "[C]ourt must determine whether fraud nevertheless is a necessary component of the claim[s]." *Xpedior Creditor Trust v. Credit Suisse First Boston (USA), Inc.*, 341 F. Supp. 2d 258, 266 (S.D.N.Y. 2004). That determination looks at "both technical elements of a claim as well as factual allegations intrinsic to the claim as alleged." *Id.*; *see also Rayner*, 899 F.3d at 120 ("Since SLUSA requires our attention to both the pleadings and the realities underlying the claims, plaintiffs cannot avoid SLUSA merely by consciously omitting references to securities or to the federal securities law.").

In that light, the SAC "plainly alleges fraudulent conduct." *Rayner*, 899 F.3d at 120. Plaintiffs allege that they were induced to pay higher premiums than appropriate because MetLife had an undisclosed policy of defaulting them to smoker status upon enrollment. *See* SAC ¶ 24. Plaintiffs allege a misrepresentation concerning the method they expected MetLife to use in calculating their premiums and the method MetLife used. Plaintiffs artfully plead around that conduct by couching their claims as a breach of MetLife's discretion to "use any reasonable method to compute [p]remiums due under" the GVUL policy. *See id.* ¶ 17.

Although styled as a breach of contract, Plaintiffs are complaining about the deception. Because these claims implicate MetLife's use of an allegedly manipulative or deceptive device or contrivance, the claims are firmly within the scope of SLUSA. *See In re Stillwater Capital Partners Inc. Litig.*, 851 F. Supp. 2d 556, 572 (S.D.N.Y. 2012) ("Unless plaintiffs were misled by misrepresentations or by material omissions, it is impossible to understand why they would approve a merger that provided such lucrative management fees at plaintiffs' expense.").

This is true regardless of whether the deception is couched as a breach of an express contractual duty to employ a reasonable computation method, an implied duty to use discretion in good faith, or an insurer's duty to care for the needs of insureds. *See Rayner*, 899 F.3d at 120 (citation omitted) (finding that claims based on breach of a broker-dealer's fiduciary duty were precluded by SLUSA because "the gravamen of [the complaint was] that E*TRADE made 'material misrepresentations and omissions that were designed to induce clients to execute non-directed, standing limit orders with E*TRADE even though E*TRADE allegedly had no intention of fulfilling its purported fiduciary obligations'"); *Holtz v. JPMorgan Chase Bank, N.A.*, 846 F.3d 928, 930–31 (7th Cir. 2017) ("Allowing plaintiffs to avoid [SLUSA] by contending that they have 'contract' claims about securities, rather than 'securities' claims, would render [SLUSA] ineffectual, because almost all federal securities suits could be recharacterized as contract suits about the securities involved.").

Indeed, the heart of Plaintiffs' claims—that they were charged excessive fees for a covered security because of a deceptive practice—is indistinguishable from other claims that courts have found precluded by SLUSA. *See Backus v. Conn. Cmty. Bank, N.A.*, 789 F. Supp. 2d 292, 307–08 (D. Conn. 2011) (finding that claims for breach of contract and negligence based on the allegation that defendants' charged investment fees "that were not calculated on the basis of the investments held . . . for each account holder" as disclosed in the governing agreement were precluded by SLUSA); *Araujo v. John Hancock Life Ins. Co.*, 206 F. Supp. 2d 377, 382 (E.D.N.Y. 2002) (finding that claims for breach of contract and breach of the implied covenant were precluded by SLUSA because plaintiffs alleged "that the defendant designed and implemented a scheme to deny policyholders the benefit of their bargain by charging [life] insurance premiums for a period of time when no coverage existed").

Plaintiffs nevertheless argue that deception is not a necessary component of their claims. Their argument rests primarily on one case, *Freeman Invs., L.P. v. Pac. Life Ins. Co.*, which found the plaintiffs' allegations that the defendant-insurer "charged them too much for life insurance and, as a result, reduced the value of their investments" was not precluded by SLUSA. 704 F.3d 1110, 1115–16 (9th Cir. 2013). In *Freeman*, the plaintiffs alleged that their policy indicated that the defendant would assess a "cost of insurance" charge, that "cost of insurance" was a term of art in the industry for "the portion of premiums from each policyholder set aside to pay claims," and that defendants nevertheless charged an amount "in excess of true mortality charges." *Id.* at 1115 (citations omitted). Thus, the Ninth Circuit Court of Appeals in *Freeman* found that SLUSA did not apply because the plaintiffs did not need to prove that defendants "misrepresented the cost of insurance or omitted critical details. They need only persuade the court that theirs is the better reading of the contract term." *Id.* (citation omitted).

Plaintiffs argue that their breach of contract claim is similar. That argument, however, misses an important detail. The complaint in *Freeman* centered entirely around an alleged breach of the contract's definition of cost of insurance; it was not necessary for plaintiffs to show that the defendant had misrepresented or omitted the cost of insurance. *Id.* at 1115–16. Here, by contrast, Plaintiffs acknowledge that MetLife used a formula for calculating premiums that was disclosed in the policy. *See* SAC ¶¶ 17–18. Instead, their claim hinges on the additional allegation that MetLife's undisclosed policy of defaulting them to smoker status induced them to enroll and pay higher premiums than they deem appropriate. That deception, therefore, is a "necessary component" of their claims, which are accordingly precluded by SLUSA. *In re Stillwater Capital Partners Inc. Litig.*, 851 F. Supp. 2d at 572.

Although Plaintiffs have amended their complaint to avoid any ostensible allegations of fraudulent conduct, the Court must acknowledge the "realities underlying the claims," and dismiss them as precluded by SLUSA. *Rayner*, 899 F.3d at 120. Plaintiffs' claims, therefore, are DISMISSED because they are precluded by SLUSA.

### B. Prima Facie Claims

Even if the Court were to find that SLUSA did not preclude Plaintiffs' claims, the SAC should be dismissed on alternative grounds. MetLife argues that Plaintiffs have failed to state prima facie claims for breach of contract, contractual breach of the implied covenant, tortious breach of the implied covenant, and negligence under California and Colorado law. *See* Def. Mem. at 17–24, ECF No. 105.[4] Here, MetLife's arguments are partially convincing. They are correct that the SAC does not state a claim for negligence or tortious breach of the implied covenant. They are also correct that Plaintiffs' claim for contractual breach of the implied covenant is duplicative of their claim for breach of contract. Plaintiffs have, however, stated a prima facie claim for breach of contract.

#### 1. Breach of Contract

In the SAC, Plaintiffs allege that Defendants breached the life insurance policy by unreasonably defaulting them to smoker status when calculating their premiums. MetLife argues that Plaintiffs have failed to state a claim because they have not identified a specific provision of the GVUL policy that Defendants breached. *See* Def. Mem. at 17–18.

As is relevant here, the elements of a claim for breach of contract under both California and Colorado law are substantively identical.[5] MetLife is correct that, under the law of both

---

[4] In ruling on the first motion to dismiss, Judge Netburn found that California and Colorado law govern the claims of Miller and Burton, respectively. *See Miller*, 2018 WL 6625096, at *7.
[5] Specifically, under both jurisdictions, a plaintiff must allege: (1) the existence of a contract; (2) that plaintiff fulfilled the contract's obligations; (3) that defendant breached the contract's obligations; and (4) that defendant's

10

states, a plaintiff must identify a specific provision of the contract that the defendant breached. *See Summit Estate, Inc. v. Cigna Healthcare of Cal., Inc.*, No. 17 Civ. 03871, 2017 WL 4517111, at *4 (N.D. Cal. Oct. 10, 2017); *Pernick v. Computershare Tr. Co., Inc.*, 136 F. Supp. 3d 1247, 1266 (D. Colo. 2015). But Plaintiffs have, in fact, identified a specific provision of the policy that can form the basis for a claim of breach of contract. *See* SAC ¶ 17; *see also* GVUL Policy at B–8, B–13.

MetLife made this same argument in their first motion to dismiss the first amended complaint. In ruling on that motion, Judge Netburn found, and this Court later agreed, that Plaintiffs had not identified a specific provision of the contract. *See* 2018 WL 6625096, at *7; *see also* 2018 WL 5993477 at *4. Judge Netburn also recommended that Plaintiffs be granted leave to amend the first amended complaint to cure the deficiency. 2018 WL 6625096, at *8. In the SAC, Plaintiffs have done so. *See* SAC ¶ 17; *see also* GVUL Policy at B-8, B-13. Specifically, Plaintiffs allege that the GVUL policy provides that "MetLife may use any reasonable method to compute [p]remiums due under this policy," GVUL Policy at B-8, and that Exhibit 1 to the GVUL Policy specified that rates would be based on the policy holder's age, smoking status, and total amount of insurance, *id.* at B-13. Plaintiffs argue that Defendants breached these provisions by using an unreasonable method in calculating their premiums by defaulting them to smoker status. *See* SAC ¶¶ 35, 49. Plaintiffs have, therefore, identified a specific provision of the contract that Defendants breached.

---

breach damaged plaintiff. *See Wall Street Network, Ltd. v. New York Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008)) ("The standard elements of a claim for breach of contract are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom.") (citation and internal quotation marks omitted); *FirsTier Bank, Kimball, Neb. v. F.D.I.C.*, 935 F. Supp. 2d 1109, 1123-24 (D. Colo. 2013) ("To state a breach of contract claim under Colorado law, a plaintiff must sufficiently plead the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff.").

11

MetLife nevertheless argues that Plaintiffs have failed to state a claim for breach of this provision because the policy of defaulting enrollees to smoker status was reasonable. *See* Def. Mem. at 17–18. That is a cogent argument of contract interpretation. But the contract does not define "reasonable" methods for calculating premiums. *See* GVUL Policy at B–8. Thus, MetLife has raised, at most, a dispute over an ambiguous term in the contract that cannot be resolved by a motion to dismiss. *See Spagnola v. Chubb Corp.*, 574 F.3d 64, 72 (2d Cir. 2009) ("[Defendant's] explanation neither resolves the ambiguity of the term 'current costs and values' [in the homeowner's insurance policy] nor adequately refutes [Plaintiff's] claim that the increases were not based on current costs and values. [Plaintiff] has therefore met the standard necessary to resist [Defendant's] motion to dismiss.").

2. Implied Covenant of Good Faith and Fair Dealing

MetLife offers six purportedly distinct bases for dismissing Plaintiffs' contractual claims for breach of the implied duty of good faith and fair dealing, including that Plaintiffs' claims should be dismissed as duplicative of their claims for breach of contract. *See* Def. Mem. at 18–21. The Court finds that under the law of their respective states of residence, Plaintiffs cannot maintain their claims for contractual breach of the implied duty.

First, under Colorado law, a claim for breach of a contract's implied covenant is just an ordinary claim for breach of contract. *See Cockriel v. Allstate Ins. Co.*, No. 14 Civ. 1064, 2015 WL 3826790, at *7 (D. Colo. June 18, 2015) (quoting *McDonald v. Zions First Nat'l Bank, N.A.*, 348 P.3d 957, 967 (Colo. App. 2015)) ("A violation of the duty of good faith and fair dealing gives rise to a claim for breach of contract."). It is, therefore, not a separate claim at all. Second, under California law, plaintiffs are not allowed to plead separate claims for breach of a contract's terms and for breach of the implied covenant. *See Gerritsen v. Warner Bros. Entm't Inc.*, 116 F.

12

Supp. 3d 1104, 1124 (C.D. Cal. 2015) ("California law is clear that breach of implied covenant claims are independent of claims for breach of the underlying contract."). But, to do so, the plaintiff must plead a distinct claim; otherwise, courts dismiss claims for breach of the implied covenant as superfluous. *See Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.*, No. 12 Civ. 6209, 2013 WL 3974537, at *7 (N.D. Cal. July 31, 2013) ("A breach of the implied covenant of good faith and fair dealing is not superfluous with a breach of contract claim when it is based on a different breach than the contract claim.") (citation and quotation marks omitted). Plaintiffs have not alleged a separate breach here. Instead, their claim for breach of the implied covenant rests on their allegation that MetLife abused its discretion in calculating premiums. *See* SAC ¶¶ 58–59. That is indistinguishable from their claim that MetLife breached the express terms of the policy.

Indeed, in their opposition, Plaintiffs admit that they pleaded this claim in the alternative should the Court find that there was no prima facie claim for breach of an express term. *See* Pl. Mem. at 19, ECF No. 107. But, as discussed above, Plaintiffs have stated a claim for breach of the policy's express terms. The claim for breach of the implied covenant is, therefore, duplicative and must be dismissed. *See NetApp*, 2013 WL 3974537, at *7.

### 3. Tortious Breach of the Implied Covenant

Plaintiffs have also failed to state a claim for tortious breach of the duty of good faith and fair dealing.

Both Colorado and California allow plaintiffs to bring claims for breach of the implied covenant sounding in tort against insurers. *See Archdale v. Am. Internat. Specialty Lines Ins. Co.*, 154 Cal. App. 4th 449, 467, n.19 (Cal. 2007); *Goodson v. Am. Standard Ins. Co. of Wisconsin*, 89 P.3d 409, 414 (Colo. 2004). But an essential element of such a claim under the

law of both Colorado and California is that the insurer withheld benefits due under a policy. *See Gentry v. State Farm Mut. Auto. Ins. Co.*, 726 F. Supp. 2d 1160, 1166 (E.D. Cal. 2010) (citing *Wilson v. 21st Century Ins. Co.*, 171 P.3d 1082, 1086-87 (Cal. 2007)) ("The elements of a claim for tortious insurance bad faith are that benefits due under the policy were withheld and that the withholding was unreasonable."); *Goodson*, 89 P.3d at 414 ("The basis for tort liability is the insurer's conduct in unreasonably refusing to pay a claim and failing to act in good faith, not the insured's ultimate financial liability.") (citation omitted). Plaintiffs do not allege that they were denied any insurance benefits. They have, therefore, failed to state a claim for tortious breach of the duty of good faith and fair dealing.

          4. Negligence

MetLife argues that Plaintiffs' claims for negligence are barred by the economic loss rules of Colorado and California. *See* Def. Mem. at 23–24. The Court agrees.

Under both California and Colorado law, purely economic losses do not give rise to claims for negligence. *See Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084, 1092 (C.D. Cal. 2017) (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (C.A. 2004)) ("The economic loss rule holds that economic losses are recoverable in contract alone.") (internal quotation marks omitted); *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000) (holding same). There are, however, exceptions. As is relevant here, both states allow plaintiffs to bring tort claims arising out of special relationships that provide for duties independent of contractual obligations. *See Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys.*, 315 F. App'x 603, 605 (9th Cir. 2008) (citing *J'Aire Corp. v. Gregory*, 598 P.2d 60, 62–63 (Cal. 1979)) ("In the absence of (1) personal injury, (2) physical damage to property, (3) a 'special relationship' existing between the parties, or (4) some other common law exception to the rule,

14

recovery of purely economic loss is foreclosed."); *Town of Alma*, 10 P.3d at 1264 ("We hold that a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law.").

Plaintiffs claim that they qualify for this exception because MetLife, as their insurer, owed them a duty of care independent of its contractual obligations. They have not, however, pointed to a single authority from either jurisdiction finding that insurers owe a general duty of care—independent of contract—in calculating their insured's premiums. *See generally* Pl. Mem. at 21–22. For Colorado law, they have pointed to just one negligence action against an insurer for physical injury and emotional distress. *See Slack v. Farmers Ins. Exch.*, 5 P.3d 280, 283 (Colo. 2000) (negligence claim alleging that insurer "acted improperly by sending [plaintiff] to a chiropractor it knew or should have known would injure her"). Plaintiffs have not identified an exception to the general rule that a "claim for simple negligence against an insurer or its agent is not recognized in Colorado." *Jordan v. City of Aurora*, 876 P.2d 38, 43 (Colo. Ct. App. 1993). As for California law, Plaintiffs have pointed to authorities finding that insurers owe policy holders a heightened duty of care. *See Vu v. Prudential Prop. & Cas. Ins. Co.*, 26 Cal. 4th 1142, 1150 (Ca. 2001) ("Under this special relationship, an insurer's obligations are greater than those of a party to an ordinary commercial contract."). They have ignored, however, that California courts have routinely rejected attempts to extend an insurer's obligations to include the claims brought here. *See Body Jewelz, Inc.*, 241 F. Supp. 3d at 1092–93 ("[T]he Court finds that the special relationship exception is not applicable here where . . . [p]laintiff and [d]efendant are in privity of contract.") (collecting cases finding same).

15

Because Plaintiffs have not identified any authority supporting their claim that life insurers owe an independent duty of care when calculating premiums, their negligence claims are dismissed.

### 5. Statutes of Limitations

Finally, the Court considers whether these claims, if they were not precluded by SLUSA and were otherwise well-pleaded, should still be dismissed as time barred. Plaintiffs argue that the continuing violation doctrine applies to their claims.[6] This effort is unavailing, and Plaintiffs' claims are dismissed, in the alternative, on timeliness grounds.

"A federal court sitting in diversity applies the forum state's statute of limitations provisions, as well as any provisions that govern the tolling of the statute of limitations." *Vincent v. Money Store*, 915 F. Supp. 2d 553, 562 (S.D.N.Y. 2013). "In diversity cases in New York, federal courts apply New York's borrowing statute, N.Y. C.P.L.R. § 202." *Commerzbank AG v. Deutsche Bank Nat'l Tr. Co.*, 234 F. Supp. 3d 462, 467 (S.D.N.Y. 2017). "Under C.P.L.R. § 202, when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period, including all relevant tolling provisions, of either: (1) New York; or (2) the state where the cause of action accrued." *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998). Thus, if Plaintiffs' claims are untimely under *either* New York law or the law of the state where the cause of action accrued, their claims must be dismissed. *Id.*

---

[6] Judge Netburn previously found that Plaintiffs' breach of contract claim was not tolled by equitable estoppel or equitable tolling, but that the claim might, if pleaded with more specificity, qualify under the continuing violation doctrine. *See Miller*, 2018 WL 6625096, at *8–10.

All of Plaintiffs' claims are untimely under New York law.[7] The statute of limitations for Plaintiffs' breach of contract claim ran six years after MetLife allegedly defaulted Plaintiffs to the smoker status in 2000. *See* N.Y. CPLR § 213(2) (providing for six-year statute of limitations for breach of contract). That same period applies to their claim for breach of the implied covenant sounding in contract. *See Flight Scis., Inc. v. Cathay Pac. Airways Ltd.*, 647 F. Supp. 2d 285, 288 (S.D.N.Y. 2009) (applying New York law) (citations omitted) ("[C]laims for breach of the covenant of good faith and fair dealing . . . are . . . subject to a six-year statute of limitations."). As for Plaintiffs' other claims, they are subject to even shorter periods under New York law; their claims for tortious breach of the implied covenant is subject to a one-year statute of limitations, N.Y. CPLR § 215(3),[8] and their negligence claim is subject to a three-year limit, N.Y. CPLR § 214. Thus, all of Plaintiffs' claims lapsed in 2006 at the latest.

Plaintiffs do not dispute that they filed their claims outside of the applicable limitations' period. *See generally* Pl. Mem. at 15–17. Instead, they argue that their claims are timely because they were tolled under the continuing violation doctrine. *See id.* In their view, MetLife's calculation of their premium at the smoker rate every year constituted a new wrong that tolled their claims.

The continuing violation doctrine cannot, however, save Plaintiffs' claims from the applicable statutes of limitations. Courts have regularly rejected the argument that the unlawful

---

[7] Because the Court finds that Plaintiffs' claims are not timely under New York law, the Court does not assess whether their claims are also untimely under Colorado and California law.

[8] Under New York law, breach of the implied covenant sounds in contract only. *See Paterra v. Nationwide Mut. Fire Ins. Co.*, 831 N.Y.S.2d 468, 470 (N.Y. 2nd Dept. 2007) ("[T]here is no separate tort for bad faith refusal to comply with an insurance contract . . . ."). When "the substance of a non-New York claim does not clearly correspond to the substance of any claim under New York law, the Court must apply the statute of limitations that applies to the most . . . analogous cause of action." *Wultz v. Bank of China Ltd.*, 306 F.R.D. 112, 115 (S.D.N.Y. 2013) (citations omitted) (internal quotation marks omitted). Plaintiffs have styled their claim of tortious breach of the implied covenant as an intentional tort. SAC ¶ 69. Thus, New York's one-year limitations period for intentional torts applies to the claim for breach sounding in tort. *See* NY CPLR § 215; *see also Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 285 (N.D.N.Y. 2018) ("[T]he statute of limitations for intentional torts . . . is one year in New York.") (citations omitted).

reassessment of premiums constitutes a continuing violation for tolling purposes under New York law. *See, e.g.*, *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 394 (E.D.N.Y. 2018) (citation omitted) ("For the purposes of calculating the applicable statute of limitations, premium payments of life insurance policies that were in effect do not constitute independent acts. . . ."); *Cunningham v. Ins. Co. of N. Am.*, 521 F. Supp. 2d 166, 171 (E.D.N.Y. 2006) (citation omitted) ("[A]nnual renewals. . . constitute only new instances of damage, and are therefore, irrelevant for limitations analysis."); *Pike v. New York Life Ins. Co.*, 901 N.Y.S.2d 76, 81 (2nd Dep't 2010) (citation omitted) ("[A]ny wrong accrued at the time of the purchase of the policies, not at the time of payment of each premium"). The authorities cited by Plaintiffs do not compel a different outcome here. *See Faulkner v. Arista Records LLC*, 602 F. Supp. 2d 470, 478 (S.D.N.Y. 2009) (finding that continuing failure to pay royalties owed under a contract tolled the statute of limitations); *1050 Tenants Corp. v. Lapidus*, 735 N.Y.S.2d 47, 49 (1st Dep't 2001) (finding that continuing failure to repair air conditioner tolled statute of limitations). Their claims, therefore, cannot be tolled under the continuing violation doctrine, and must be dismissed as untimely under New York law.

    C. Leave to Amend

Plaintiffs request leave to amend their SAC. Pl. Mem. at 22. Generally, leave to amend should be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "Nonetheless, a motion to amend should be denied if there is an apparent or declared reason—such as . . . repeated failure to cure deficiencies by amendments previously allowed . . . or futility of amendment." *Dluhos v. Floating & Abandoned Vessel, Known as "New York"*, 162 F.3d 63, 69 (2d Cir. 1998) (internal quotation marks and citation omitted); *see also Xiaohong Xie v. Furniture Contractor of J.P. Morgan Chase Bank, N.A.*, No. 16 Civ. 6485, 2019 WL 1213084, at

*7 (S.D.N.Y. Feb. 20, 2019) ("[A]n amendment is considered futile where it would add a claim that would be barred by the applicable statute of limitations.").

Plaintiffs have twice amended their complaint. *See* ECF Nos. 73, 97. Plaintiffs amended their original complaint after Defendants moved to dismiss the original complaint. *See* ECF Nos. 67, 73. Plaintiffs were then granted leave to file the SAC after their first amended complaint was dismissed. 2018 WL 6625096, at *8. Plaintiffs' claims are, however, still barred by SLUSA and the applicable statutes of limitations—two independent grounds. Amending, therefore, would likely be futile. Because Plaintiffs have had opportunities to cure the defects in their complaints and because amending would likely be futile, Plaintiffs' request for leave to amend is DENIED.

## CONCLUSION

For the reasons stated above, MetLife's motion to dismiss Plaintiffs' claims is GRANTED. The Clerk of Court is directed to terminate the motion at ECF No. 104 and close this case.

SO ORDERED.

Dated: September 17, 2019
New York, New York

_____
ANALISA TORRES
United States District Judge